UNITED STATES OF AMERICA
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

---

RETA GORIAL

        plaintiff

v

PFIZER, INC., AND MANPOWERGROUP, INC.

        defendants

Case No. 22-

Hon.:

---

Attorneys for plaintiff:

Samuel L. Estenson (P82414)
DeLoof, Dever, Eby,
Milliman & Issa, PLLC
301 N. Main St., 2nd Floor
Ann Arbor, MI 48104
(734) 994-1295
sle@deloofdevereby.com

Nicholas Roumel (P37056)
NACHT & ROUMEL, P.C.
101 N. Main St., Ste. 555
Ann Arbor MI  48104
734-663-7550
*nroumel@nachtlaw.com*

---

**COMPLAINT AND JURY DEMAND**

Plaintiff makes her complaint as follows:

1

## Preliminary Statement

1. This is an action on behalf of Plaintiff Reta Gorial, a former employee of Defendant Pfizer, Inc. through joint employer and staffing agency Defendant ManpowerGroup US, Inc., who has been harmed by Defendants' discriminatory employment practices.

2. This action arises under Title VII of the Civil Rights Act of 1964, 42 USC 2000e-2; 29 CFR 1605.1 *et seq.*, 42 U.S.C. § 1981, and the Elliott-Larson Civil Rights Act ("ELCRA"), MCL 37.2201 *et seq*.

## Parties/Jurisdiction/Venue

3. Plaintiff Reta Gorial is non-white, of Iraqi heritage, and a resident of Macomb County, Michigan.

4. Defendant Pfizer, Inc. ("Pfizer") is a Delaware corporation, headquartered in New York City, New York. They are registered as a "foreign profit corporation" with the state of Michigan. Their resident agent is the Corporation Company, 40600 Ann Arbor Rd, Suite 201, Plymouth, Michigan, 48170.

5. Defendant ManpowerGroup US, Inc. ("Manpower"), is a Wisconsin corporation company headquartered in Milwaukee, Wisconsin. They are registered as a "foreign profit corporation" with the state of Michigan. Their resident agent is the Corporation Company, 40600 Ann Arbor Rd, Suite 201, Plymouth, Michigan, 48170.

6. At all times relevant, both Defendants jointly employed Ms. Gorial.

7. This action arises under Title VII of the Civil Rights Act of 1964, 42 USC 2000e-2; 29 CFR 1605.1 *et seq.*, and the Elliott-Larson Civil Rights Act ("ELCRA"), MCL 37.2201 *et seq.*

8. This Court has subject matter jurisdiction over federal claims pursuant to 28 U.S.C. § 1331 and over state claims pursuant to 28 U.S.C. § 1367.

9. Venue is proper in this Eastern District of Michigan pursuant to 28 U.S.C. § 1391, as it is the district where the events giving rise to Plaintiffs' claims took place.

10. Plaintiff filed EEOC charges against both Defendants alleging discrimination on the basis of race, national origin, and retaliation for opposing discrimination.

11. On or about February 28, 2022 Plaintiff received right to sue letters from the EEOC dated February 23, 2022.

**Plaintiff's Employment**

12. Plaintiff Reta Gorial began working for Defendant Pfizer, via Defendant Manpower, as a first shift Sterile Manufacturing Operator ("SMO") in Pfizer's packaging department on or around February 24, 2020.

13. Ms. Gorial always performed her duties satisfactorily.

14. She is highly skilled and highly educated, with a chemical engineering degree.

15. She is also an Iraqi immigrant, having immigrated to the United States in 1992.

## Plaintiff encounters discrimination at Pfizer

16. Almost immediately upon starting her Manpower assignment at Pfizer, Ms. Gorial was subjected to bullying and daily harassment on the basis of her skin color and national origin.

17. Co-workers, none of whom were of Middle Eastern origin, singled Ms. Gorial out for abuse.

18. The discrimination was overt and in plain sight.

19. For instance, on March 26, 2020, a co-worker told Ms. Gorial "go back to your country, Ms. Iraq."

20. This comment led Ms. Gorial to feel humiliated and disrespected.

21. Ms. Gorial reported the discrimination to her direct supervisor, Brian Korson, who took no action.

22. Management's failure to act emboldened Ms. Gorial's tormenters, who continued to harass her with impunity, frequently telling her she was unwelcome or telling her she would soon be fired.

23. One co-worker called Ms. Gorial "Arab shit," and made frequent

references to "you people," for instance in explaining to Ms. Gorial how she did not like business owners of Arab descent.

24. In approximately April, 2020, a supportive co-worker went to Mr. Korson on Ms. Gorial's behalf, and told him she witnessed daily racial and national-origin based harassment and bullying of Ms. Gorial, and alleged a hostile work environment existed in the department.

25. On information and belief, Defendants took no action whatsoever to ensure Ms. Gorial's safety or protect her rights in the workplace.

**Plaintiff is improperly trained and passed over for promotion**

26. In addition to experiencing daily discrimination, Ms. Gorial was never provided training comparable to other employees, despite numerous requests to Mr. Korson to receive comparable training.

27. In Ms. Gorial's department there were seven stations that SMOs typically alternated between.

28. Other, non-Iraqi SMOs, including Ms. Gorial's tormentors, were trained to operate all seven.

29. Ms. Gorial was only trained on one of them in her first six months, jeopardizing her ability to advance.

30. Then, in May 2020, a permanent SMO position came open at Pfizer, to which Ms. Gorial applied.

31. She was not even interviewed for the position, and the position was ultimately filled by a non-Iraqi, non-Middle Eastern candidate.

32. Upon information and belief, Ms. Gorial's harassers, all of whom had worked at Pfizer with Korson for multiple years, influenced the hiring decision, on the improper bases of race and national origin.

**Defendants' failure to address discrimination and a hostile work environment leads to a workplace assault on Plaintiff**

33. After months of enduring daily harassment, in August 2020 Ms. Gorial went above Mr. Korson and asked Pfizer Plant Manager Kirk Wolfe to transfer her to a newly created packaging department second shift in an effort to escape her tormenters, and the request was granted.

34. Unfortunately, Ms. Gorial discovered the pervasive hostile work environment in Pfizer's packaging department spanned both shifts.

35. People of Middle Eastern origin were a frequent topic of discussion in the packaging department; Ms. Gorial's co-workers continued to make references to "you people" and complain about various stereotypes of Arab-Americans to Ms. Gorial.

36. Although the discriminatory environment was overt, Defendants allowed this behavior to continue until it escalated to threats and actual violence.

37. In September 2020, a coworker approached Ms. Gorial at her workstation, pinned her by her neck, and told her "I could break you right now."

6

38. This incident and many others were witnessed by multiple Pfizer employees.

39. Upon information and belief, other employees in the packaging department also independently reported the use of racial slurs and a hostile work environment to Pfizer management, including plant manager Wolfe, with no effect.

40. As the 2020 election neared, the harassment of Ms. Gorial escalated.

41. Ms. Gorial was told that if she did not vote (presumably for her co-workers' preferred candidate), her co-workers would "ship her back to Iraq," "ship her back to Syria" (Ms. Gorial is Iraqi), and "ship her back to the mountains and caves."

42. Then, horrifically, in November 2020, the same co-worker who had grabbed Ms. Gorial by the neck threatened and assaulted her with a box cutter, pressing the razor blade against her shoulder and stating "do you know what this would do to you? It will slice your ass."

43. Ms. Gorial feared she would be killed at work.

44. Even though Pfizer's management had previously failed to address or prevent the egregious discriminatory behavior that Ms. Gorial reported, leading to her being assaulted, on November 19, 2020 Ms. Gorial made a final complaint, directly to the plant manager, Mr. Wolfe.

45. Shockingly, Mr. Wolfe implied he was aware of the hostile work

environment Ms. Gorial and other workers in the packaging department endured, stating "I was waiting for you to say something."

46. Manpower was also alerted to the assault on Ms. Gorial and the hostile work environment she was being subjected to.

### Defendants abruptly fire Plaintiff mid-shift in retaliation for opposing discrimination

47. Shortly thereafter, Pfizer suspended the co-worker who had attacked Ms. Gorial pending investigation.

48. Representatives for both Defendants also sought additional information from Ms. Gorial.

49. Ms. Gorial struggled to deal with the trauma of the attack.

50. Then, mere weeks later on December 18, 2020, Ms. Gorial was abruptly terminated by Defendants.

51. Humiliatingly, she was escorted from the Pfizer grounds by security mid-shift.

52. Defendants also fired other Manpower supplied employees, and represented Ms. Gorial was fired because their temporary assignment had come to an end.

53. However, belying this claim, Ms. Gorial and the other Manpower workers were given no prior notice their assignment would be coming to an end, and Plaintiff was terminated mid-shift.

54. The temporal proximity between Ms. Gorial reporting and opposing discriminatory treatment and her termination alone gives rise to an inference that she was terminated in violation of Title VII and ELCRA.

## Legal Allegations

### Count I
### Title VII – Race/ National Origin Discrimination in Employment
### (both Defendants)

55. Defendants were, at all relevant times, employers as defined by Title VII of the Civil Rights Act of 1964.

56. Plaintiff was an employee as defined by Title VII.

57. As a non-white Iraqi native, Plaintiff was a protected person under Title VII on the basis of race and/or national origin.

58. Defendants' animus towards Plaintiff, and the severe and pervasive harassment and interference with her employment described herein, culminating in her termination, was illegally motivated by Plaintiff's race and/or national origin.

59. Defendants' discrimination has damaged Plaintiff as stated herein and below.

### Count II
### ELCRA – Race/ National Origin Discrimination in Employment
### (both Defendants)

60. Defendants were, at all relevant times, employers as defined by ELCRA.

61. Plaintiff was an employee as defined by ELCRA.

62. As a non-white Iraqi native, Plaintiff was a protected person under ELCRA on the basis of race and/or national origin.

63. Defendants' animus towards Plaintiff, and the severe and pervasive harassment and interference with her employment described herein, culminating in her termination, was illegally motivated by Plaintiff's race and/or national origin.

64. Defendants' discrimination has damaged Plaintiff as stated herein and below.

### Count III
### Title VII – Hostile Work Environment
### (both Defendants)

65. Defendants were, at all relevant times, employers as defined by Title VII of the Civil Rights Act of 1964.

66. Plaintiff was an employee as defined by Title VII.

67. As a non-white Iraqi native, Plaintiff was a protected person under Title VII on the basis of race and/or national origin.

68. Defendants, through their actions and inactions fostered and condoned a discriminatory hostile work environment, based on race and/or national origin, that victimized and damaged Plaintiff.

69. The hostile work environment created was severe and/or pervasive, and altered the conditions of Plaintiff's employment.

70. Plaintiff experienced both constant derogatory verbal harassment and physical assaults in the work place.

71. Defendants' management knew or should have known of the hostile environment within Defendant Pfizer's packing department, but did nothing and allowed it to continue when action was required by law.

72. Defendants' failure to act created and perpetuated a discriminatory hostile work environment for Plaintiff, which damaged Plaintiff as stated herein and below.

## Count IV
## ELCRA – Hostile Work Environment
### (Defendant Pfizer only)

73. Defendant Pfizer was, at all relevant times, an employer as defined by ELCRA.

74. Plaintiff was an employee as defined by ELCRA.

75. As a non-white Iraqi native, Plaintiff was a protected person under ELCRA on the basis of race and/or national origin.

76. Defendants, through their actions and inactions fostered and condoned a discriminatory hostile work environment, based on race and/or national origin, that victimized and damaged Plaintiff.

77. The hostile work environment created was severe and/or pervasive, and altered the conditions of Plaintiff's employment.

78. Plaintiff experienced both constant derogatory verbal harassment and physical assaults in the work place.

79. Defendants' management knew or should have known of the hostile environment within Defendant Pfizer's packing department, but did nothing and allowed it to continue when action was required by law.

80. Defendants' failure to act created and perpetuated a discriminatory hostile work environment for Plaintiff, which damaged Plaintiff as stated herein and below.

### Count V
### TITLE VII – Failure to Hire
### (Defendant Pfizer only)

81. Defendant Pfizer was, at all relevant times, an employer as defined by Title VII of the Civil Rights Act of 1964.

82. Plaintiff was an employee as defined by Title VII.

83. As a non-white Iraqi native, Plaintiff was a protected person under Title VII on the basis of race and/or national origin.

84. If not for Plaintiff's race and/or national origin, she would have been hired by Defendant Pfizer in or around May 2020 for the permanent SMO position.

85. Defendant Pfizer's actions, including its failure to consider or hire Plaintiff, were motivated by unlawful discrimination against Plaintiff because of her race and/or national origin.

86. Defendant Pfizer's actions constitute unlawful discrimination against Plaintiff in violation of Title VII.

87. Defendants' discrimination has damaged Plaintiff as stated herein and below.

## Count VI
## ELCRA – Failure to Hire
### (Defendant Pfizer only)

88. Defendant Pfizer was, at all relevant times, an employer as defined by ELCRA.

89. Plaintiff was an employee as defined by ELCRA.

90. As a non-white Iraqi native, Plaintiff was a protected person under ELCRA on the basis of race and/or national origin.

91. If not for Plaintiff's race and/or national origin, she would have been hired by Defendant Pfizer in or around May 2020 for the permanent SMO position.

92. Defendant Pfizer's actions, including its failure to consider or hire Plaintiff, were motivated by unlawful discrimination against Plaintiff because of her race and/or national origin.

93. Defendant Pfizer's actions constitute unlawful discrimination against Plaintiff in violation of ELCRA.

94. Defendants' discrimination has damaged Plaintiff as stated herein and below.

### Count VII
### TITLE VII – Retaliation
### (both Defendants)

95. Plaintiff made statements to Defendants, including to Brian Korson and Kirk Wolfe, stating she believed she was being singled out, harassed, bullied, and assaulted on the basis of her race/national origin.

96. These statements, opposed to discrimination, constituted protected activity under Title VII.

97. Plaintiff's protected activity was made in good faith.

98. Defendants subjected Plaintiff to severe retaliatory harassment and interference with her employment, up to and including termination, illegally motivated by Plaintiff's protected activity.

99. This retaliation was in violation of Title VII, 42 U.S.C. §2000e-3(a).

100. Defendants' retaliation has damaged Plaintiff as stated herein and below.

### Count VIII
### ELCRA – Retaliation
### (both Defendants)

101. Plaintiff's opposition to discrimination, as described above, constituted protected activity under ELCRA.

102. Plaintiff's protected activity was made in good faith.

103. Defendants subjected Plaintiff to severe retaliatory harassment and interference with her employment, up to and including termination, illegally motivated by Plaintiff's protected activity.

104. This retaliation was in violation of ELCRA, MCL § 37.2701 (a).

105. Defendants' retaliation has damaged Plaintiff as stated herein and below.

### Count IX
### Violation of 42 U.S.C. 1981
### (both Defendants)

106. 42 U.S.C. § 1981 provides:

*Equal Rights Under the Law*

All persons in the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts to sue, be parties, give evidence, and to the full and equal benefit of all of laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses and exactions of every kind, and to no other.

107. Under the 14th Amendment, Plaintiff has the guaranteed right to make and enforce contracts.

108. 42 U.S.C. § 1981 prohibits intentional discrimination in the making and enforcement of contract involving both, public and private actors.

109. Plaintiff was subjected to intentional discrimination by Defendants, through their agents, representatives, and employees, because of her race and/or Arab ethnicity.

15

110. Defendants, through their agents, representatives and employees, discriminated against Plaintiff in violation of 42 U.S.C. § 1981 and deprived Plaintiff of her civil rights to make and enforce contracts by among other things:

    a. Subjecting Plaintiff, because of her racial/ethnic background, to discrimination in the making and enforcement of her employment contracts;

    b. Subjecting Plaintiff, because of her racial/ethnic background, to embarrassment, humiliation, verbal and nonverbal harassment on their premises, which had the purpose and/or effect of denying Plaintiff full and/or equal access to the enjoyment and use of all benefits, privileges, terms, and conditions of the contractual relationship between Plaintiff and Defendants in the employment setting; and

    c. Subjecting Plaintiff to severe and emotional distress and anguish by their discrimination and retaliatory harassment.

111. Because of Defendants' unlawful actions, Plaintiff has sustained damages as set forth herein and below.

## Damages

112. Defendants' actions were done willfully with reckless indifference to Plaintiff's rights.

113. Plaintiff has mitigated her damages in good faith.

114. Defendants' actions directly caused and proximately caused Plaintiff the following damages:

    a. *economic damages*: including but not limited to lost past and future wages, other compensation, contract benefits, unpaid tax benefits, other potential compensation such as bonuses, pay raises, training, promotions, and

enhanced retirement benefits, and all other economic damages as may be proven due to Defendants' liability as alleged above; and incidental and consequential damages as may be proven.

b. *non-economic damages*: including but not limited to embarrassment, humiliation, outrage, pain and suffering, mental and emotional distress.

## Jury Demand

Plaintiff demands a jury trial.

## Relief Requested

*W H E R E F O R E* Plaintiff requests this honorable court grant her the following relief:

a. Actual and consequential damages as may be proven;

b. Punitive damages, for Defendants' willful conduct, as warranted by law;

c. Equitable relief, compensatory damages, and exemplary damages, as warranted by law;

d. Costs, attorneys' fees, and interest incurred prosecuting this claim; and

e. All further relief as the Court deems just and equitable.

                                        Respectfully submitted,

                                        DeLoof, Dever, Eby,
                                        Milliman & Issa, PLLC

                                        */s/ Samuel Estenson*

                                        Samuel Estenson
                                        Attorney for plaintiff


                                        Nacht & Roumel, P.C.

                                        */s/ Nicholas Roumel*

                                        Nicholas Roumel
                                        Attorney for plaintiff

March 15, 2022